# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **JEFFREY LYN UNDERWOOD,** | |
| Plaintiff, | Case No. 7:15CV00513 |
| v. | **OPINION** |
| **C. BEAVERS, ET AL.,** | By: James P. Jones |
| | United States District Judge |
| Defendants. | |

*Jeffrey Lyn Underwood, Pro Se Plaintiff; Ashlee A. Webster, LeClairRyan, Roanoke, Virginia, for Defendant Santos; and Angela Boice Axselle, Goodman Allen Donnelly, PLLC, Glen Allen, Virginia, for Defendant Mehmood.*

Jeffrey Lyn Underwood, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983. Liberally construed, Underwood's Complaint alleges that in violation of his rights under the Eighth Amendment, prison officials mishandled a guard dog that bit Underwood, causing injuries for which the defendants, Chauncey Santos, M.D. ("Dr. Santos"), and Khalid Mehmood, M.D. (Dr. Mehmood), failed to provide adequate medical treatment. After review of the record, I conclude that the motions to dismiss filed by Dr. Santos and Dr. Mehmood must be granted.[1]

---

[1] I will address separately motions for summary judgment by other defendants in the case.

I.

At the time of the alleged violations, Underwood was incarcerated at Keen Mountain Correctional Center ("Keen Mountain").[2] On October 7, 2014, in relation to an altercation between Underwood and another inmate, a guard dog bit Underwood's left forearm. Officials transported Underwood to the emergency room at nearby Clinch Valley Medical Center ("CVMC"), where medical staff dressed his wounds and administered an oral antibiotic.

On October 9, 2014, Underwood experienced swelling of his left forearm. The prison doctor referred him to Dr. Santos, a local orthopedic specialist, for further evaluation and treatment. Dr. Santos examined Underwood and reported an observation of:

> multiple puncture wounds especially over the extensor compartment starting from the proximal third of the forearm where a 1 centimeter laceration is noted with serous drainage. There are multiple other lacerations which do not look as deep. There is moderate swelling of the extensor compartment. There is no swelling of the flexor compartments. He has a seventy percent limitation in the range of motion of the wrist and fingers. There is pain when attempting to extend the fingers and the wrist. The pain is less intense when he tries to make a fist although he cannot make a full fist. He has strong radial pulse. He has good capillary filling. There is slight redness around the wound area.

---

[2] This summary of events related to Underwood's claims against Dr. Santos and Dr. Mehmood is based on his Complaint and its attachments.

(Compl. Ex. D, at 13, ECF No. 1-2.)[3]  Dr. Santos assessed a wound infection.  He noted that Underwood denied any past medical or surgical history or past hospitalization and that he was taking an oral antibiotic and Motrin.  Dr. Santos reported advising Underwood that he might have "compartment syndrome" and that a fasciotomy was a possibility.  (*Id.*)  Dr. Santos then admitted Underwood to CVMC for IV antibiotics and close observation, and requested an MRI of the injured arm.

At CVMC, Dr. Mehmood supervised Underwood's care that included administering the antibiotics Dr. Santos had recommended:  "[V]ancomycin and Zosyn."  (*Id.* Ex. F, at 19, ECF No. 1-2.)  Underwood alleges that on two occasions, while in the hospital, he went into what he refers to as "heart failure," when his heart would race at a rate of 197 to 200 beats per minute. (Compl., at 11, ECF No. 1.)  Medical records that Underwood submitted indicate that because of his episodes of racing heartbeat, known as supraventricular tachycardia ("SVT"), Dr. Mehmood transferred Underwood to the hospital's intensive care unit, administered the drug adenosine by IV to slow down his heart beat on two

---

[3] The pages of Underwood's Complaint are not sequentially numbered.  Thus, in my Opinion, I will cite to the page numbers of the court's Electronic Case Filing ("ECF") version of each document.

occasions, ordered an echocardiogram, and consulted with a cardiologist.[4]  (*Id.* Ex. F, at 19, ECF No. 1-2.)   Underwood alleges that Dr. Mehmood told him "something had trigger[ed] his heart to start beating out of control.  [Underwood] said, "Yeah all that IV medicine bag after bag is the cause of it!"  (Compl.*,* at 12, ECF No. 1.)  Dr. Mehmood said the SVT episodes "came from the infection in [Underwood's] arm by the K-9 attack dog," but Underwood still blamed the IV medication.  (*Id.*)   Underwood submits an untitled internet description of the medication Vancomycin that indicates cardiac arrest as a rare, possible side effect in circumstances of "[r]apid bolus administration" of the drug.  (*Id.* Ex. B, at 2, ECF No. 57-1.)

Underwood's submissions indicate that after the interventions Dr. Mehmood ordered, Underwood's condition had stabilized and his wound condition had improved by the time Dr. Mehmood discharged him from CVMC.  Underwood returned to the prison on October 13, 2014, with ongoing oral medications.

---

[4]  In his consultation report, dated October 11, 2014, the cardiologist stated:

> [Underwood] was noted to have episodes of [SVT] requiring chemical cardioversion with adenosine.  Heart rate is in the 200 range.  Overall, responded well to adenosine.  Initially 6 mg. and then subsequently 12 mg for the second episode.  He otherwise states he is doing well.  Denies any chest pain, shortness of breath.  States he has [had] multiple episodes of this similar type of problems in the past.  He has been using the Valsalva maneuver to correct these events.

(*Id.* Ex. E, at 15, ECF No. 1-2.)  At the end of the report, the cardiologist noted his recommendation to continue Underwood's current medications, including the antibiotics.

In the following weeks, Underwood experienced similar episodes with his heart beat racing. Ultimately, he underwent "ablation of a concealed left lateral accessory pathway for incessant paroxysmal AVRT" on January 5, 2015, a "cardiac catheterization" on January 6, and a second "ablation" surgery in June 2015. (Compl. Ex. X, at 56, 83, ECF No. 1-2; Compl., at 1, ECF No. 1.)

In his § 1983 Complaint, Underwood contends that the medical care Dr. Santos and Dr. Mehmood provided to him in October 2015 was inappropriate, in violation his constitutional rights.[5] Specifically, he alleges that Dr. Santos, when examining him on October 9, 2014, failed to test the bacterial infection in his arm before prescribing IV antibiotics. He asserts that the IV antibiotics that Dr. Santos prescribed, and Dr. Mehmood administered, could have been "non-active" against the infection in Underwood's arm and "can cause heart failure if giv[en] to[o] much." (Compl., at 28, ECF No. 1.) Underwood also contends that to continue these IV medications after he suffered "heart failure" constituted "deliberate indifference to [his] serious medical needs in violation of the Eighth Amendment." (*Id.*) Underwood seeks compensatory and punitive damages. Dr. Santos and Dr. Mehmood have filed separate motions to dismiss, and Underwood has responded, making these matters ripe for disposition.

---

[5] Underwood expressly states in several submissions that he is not raising claims of medical malpractice against these defendants.

## II.

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint to determine whether the pleader has properly stated a plausible claim for relief. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). When addressing such a motion, the court accepts as true all well-pled *facts* and draws "all reasonable factual inferences from those facts in the plaintiff's favor." *Id.* at 244. However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). "A claim has facial plausibility" and survives a 12(b)(6) motion only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights. *See Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). An Eighth Amendment claim regarding a prisoner's course of medical care requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the defendant was aware of the need for medical attention

but failed either to provide it or to ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). For purposes of this Opinion, I will assume without finding that the condition of Underwood's arm on October 9, 2014, presented a serious medical need for treatment when Dr. Santos examined him, and in the ensuing days when Dr. Mehmood provided him treatment in the hospital.

To prevail on his § 1983 claim, Underwood must also show that each of the doctors acted with "deliberate indifference" to that need — in essence, that the doctor acted with "subjective recklessness" in the face of that serious medical need. *See Farmer*, 511 U.S. at 839-40. This component requires proof of intent beyond mere negligence, errors in medical judgment, inadvertent oversights, or disagreements the prisoner may have with the doctor about the appropriate treatment plan. *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (citing *Farmer*, 511 U.S. at 837)); *Germain v. Shearin*, 531 F. App'x 392, 395 (4th Cir. 2013) (unpublished) (finding that deliberate indifference standard "is not satisfied by . . . mere disagreement concerning '[q]uestions of medical judgment,'") (quoting *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir.1975)); *Webb v. Hamidullah*, 281 F. App'x 159, 166 (4th Cir. 2008) (unpublished) ("Put simply, negligent medical diagnoses or treatment, without more, do not constitute deliberate indifference."). Specifically, Underwood must state facts showing that

-7-

Case 7:15-cv-00513-PMS   Document 115   Filed 09/23/16   Page 7 of 9   Pageid#: 1085

each doctor knew of and disregarded, or responded unreasonably to, an excessive risk to Underwood's health or safety. *Farmer*, 511 U.S. at 837.

Taking Underwood's allegations and the undisputed portions of the medical records on which he relies in the light most favorable to him, I conclude that he has not pleaded facts showing that Dr. Santos or Dr. Mehmood acted with deliberate indifference. Clearly, these defendants did not fail to treat Underwood's wounded arm or his heart issues. The record reflect that Dr. Santos diagnosed Underwood as having a wound infection despite being treated with an antibiotic immediately after his injury, and made medical judgments that hospitalization, IV antibiotics, and close monitoring were the appropriate treatments. He ordered an MRI to follow up on his concern that Underwood might also have compartment syndrome. At CVMC, Dr. Mehmood made medical judgments, finding appropriate the IV antibiotics that Dr. Santos had ordered and administering them over time. When Underwood's heart beat began racing, Dr. Mehmood responded to the risks this condition presented by placing his patient in intensive care, providing medication to slow his heart beat, and consulted a heart specialist, who reviewed Underwood's symptoms and approved the treatments being provided, including the IV antibiotics.

Underwood's complaints about the doctors' actions are, at most, disagreements with the doctors' medical judgments about the use of IV antibiotics

to fight the infection in his wounded arm.  His contentions that the doctors made faulty treatment decisions — by failing to test the bacteria in his arm before giving him the IV antibiotics or by not stopping the IV drugs after the first SVT episode — suggest, at most, an allegation of negligence or inadvertent oversight.  Such allegations do not support a finding of deliberate indifference as required to state a constitutional claim against Dr. Santos or Dr. Mehmood.  Furthermore, as Underwood's conclusory assertions that the IV drugs he received caused his ongoing SVT episodes have no factual support in the record, I need not credit them as true.

## III.

In conclusion, I cannot find that Underwood's Complaint and submissions support any actionable § 1983 claim against Dr. Santos or Dr. Mehmood.  Accordingly, I will grant their motions to dismiss.

A separate Order will be entered herewith.

DATED: September 23, 2016

/s/  James P. Jones
United States District Judge