# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **JEFFREY LYN UNDERWOOD,** | )<br>) |
| Plaintiff, | ) Case No. 7:15CV00513<br>) |
| v. | ) **OPINION AND ORDER**<br>) |
| **C. BEAVERS, ET AL.,** | ) By: James P. Jones<br>) United States District Judge |
| Defendants. | )<br>) |

*Jeffrey Lyn Underwood, Pro Se Plaintiff; Mary Foil Russell, Russell Law Firm, Bristol, Virginia, for Defendant Stephanie Phillips.*

Jeffrey Lyn Underwood, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983. Liberally construed, Underwood's Complaint alleges that in violation of his rights under the Eighth Amendment, prison employees wrongfully attacked Underwood with a guard dog, causing injuries for which the defendant, Stephanie Phillips, D.O. ("Dr. Phillips"), and others failed to provide adequate medical treatment. After review of the record, I conclude that Dr. Phillips' Motion for Summary Judgment must be granted.[1]

---

[1] I will address separately the other defendants' dispositive motions.

I.

At the time of the alleged violations, Underwood was incarcerated at Keen Mountain Correctional Center ("Keen Mountain"). On October 7, 2014, in relation to Underwood's altercation with another inmate, a K-9 officer directed his dog to attack Underwood. From the encounter with the dog, Underwood sustained multiple puncture wounds and lacerations on his left forearm.

Dr. Phillips, a physician employed by the Virginia Department of Corrections ("VDOC"), examined and treated Underwood briefly at the prison medical unit.[2] Then, officials transported him to the nearby Clinch Valley Medical Center ("CVMC") emergency room, where medical staff dressed his wounds and administered an oral antibiotic.

When Underwood returned to Keen Mountain, Dr. Phillips re-evaluated him and placed him in the medical unit for two days for monitoring and observation of his wounds. His continuing care plan included antibiotics, twice daily dressing changes, and an urgent referral to an orthopedist.

On October 9, 2014, Dr. Chauncey Santos, a local orthopedist, evaluated Underwood's injured arm. A nurse in Dr. Santos' practice notified Dr. Phillips later that day that Dr. Santos was admitting Underwood to CVMC for IV

---

[2] The parties agree on the course of treatment Dr. Phillips provided to Underwood while he was at Keen Mountain, as outlined in her declaration and the undisputed medical records that she and Underwood have submitted.

antibiotics, based on his concern about a high possibility of compartment syndrome (a buildup of pressure in an enclosed compartment of muscles in the body). While Underwood was hospitalized at CVMC, he experienced two episodes when his heart rate became elevated — a cardiac condition known as supraventricular tachycardia ("SVT"). The hospital doctor, Dr. Mehmood, placed Underwood in the intensive care unit and successfully treated him intravenously with a drug that slowed his heart beat to a more normal rate. When Underwood's condition had stabilized and his wound condition had improved, Dr. Mehmood discharged him on October 13. In his discharge summary, Dr. Mehmood recommended, among other things, "follow up with electrophysiologist as outpatient" regarding Underwood's SVT episodes. (Compl. Ex. F, at 20, ECF No. 1-2.)[3]

Dr. Phillips re-evaluated Underwood on October 14, 2014, and wrote orders for a non-emergency cardiology referral to Virginia Commonwealth University ("VCU") via telemedicine ("telemed") for evaluation of Underwood's SVT issues. She also placed a quality medical control ("QMC") request for approval by VDOC medical staff of the VCU telemed referral, per standard protocol for any medical consultation for a VDOC prisoner with a physician outside the prison. In addition,

---

[3] The pages of Underwood's Complaint and exhibits are not sequentially numbered. I will thus cite to the page numbers of the court's Electronic Case Filing ("ECF") version of each document.

-3-

Case 7:15-cv-00513-PMS Document 117 Filed 09/26/16 Page 3 of 14 Pageid#: 1091

Dr. Phillips also wrote orders for antibiotics, pain medication, an extra pillow to elevate the injured arm, and a follow up with the orthopedist. She scheduled a follow up appointment with Underwood in two days to check his wounds and ordered daily wound dressing along with other nursing care. At that visit on October 16, Dr. Phillips noted that Underwood's vital signs were stable, there was no sign of infection, and he was doing well.

Dr. Phillips evaluated Underwood again on October 23, 2014. She noted no complaints of palpitations or chest pain. His vital signs were stable, and his wounds were healing well. Dr. Phillips reviewed with Underwood reasons that he should alert the medical department, and he indicated his understanding of these instructions. Underwood also had follow up evaluations with Dr. Santos. When he filed inmate request forms or complaints in October and November, asking about his appointment with the heart specialist, staff responded that it was in the process of being scheduled.

The VCU telemed appointment with a cardiologist that Dr. Phillips had requested for Underwood was approved and scheduled for December 17, 2014. In the meantime, Dr. Phillips evaluated Underwood on November 18 for complaints of occasional heart fluttering. She found his pulse to be normal at that time, but until he could be assessed by the cardiologist, she adjusted Underwood's Metroprolol dosage. Metroprolol is a common medication used with SVT patients

to control the heart rate. On December 7, in preparation for the upcoming cardiology visit, Underwood underwent an electrocardiogram ("EKG"). The test reflected that his pulse rate was well controlled at 80 beats per minute.

Underwood's VCU telemed appointment occurred as scheduled on December 17, 2014. Underwood alleges that he was told during the visit that "the [E]KG heart test showe[d] [his] heart was beating way to[o] fast and he would be scheduled to see the heart specialist." (Compl., at 20, ECF No. 1.) On December 26, Dr. Phillips reviewed with Underwood the cardiologist's notes from the telemed consultation. Following standard procedure as Underwood's primary physician, Dr. Phillips had transcribed the cardiologist's notes into Underwood's chart and had written orders as the cardiologist had requested, to be carried out by the nursing and scheduling staff. As the cardiologist had requested, Dr. Phillips placed orders for Underwood to be assessed at the Medical College of Virginia ("MCV") electrophysiology clinic — for routine outpatient follow up regarding his heart rhythm issue, rather than for an emergency or urgent intervention. Dr. Phillips also noted the cardiologist's diagnosis of Underwood's condition as "AV nodal reentrant tachycardia," a non-emergency condition. (Phillips Decl. ¶ 22, ECF No. 59-1.)

On December 30, 2014, Underwood presented to the Keen Mountain medical unit with complaints of dizziness, severe chest pain, and feeling like he

-5-

Case 7:15-cv-00513-PMS   Document 117   Filed 09/26/16   Page 5 of 14   Pageid#: 1093

was going to pass out. Dr. Phillips assessed him and had someone immediately call for an ambulance. Keen Mountain staff stabilized Underwood with oxygen, administered aspirin 81 mg, and obtained an IV line in preparation for ambulance transport. Underwood went first to the CVMC emergency room for evaluation and was hospitalized at CVMC until January 2, 2015, when he was transported to MCV and admitted to the hospital there.

Dr. Phillips did not see Underwood again after preparing him for ambulance transport on December 30, 2014, and was not involved in his medical care after that point. She left her position at Keen Mountain in January 2015.

At MCV, Underwood underwent "ablation of a concealed left lateral accessory pathway for incessant paroxysmal AVRT" on January 5, 2015, and a "cardiac catheterization" on January 6. (Compl. Ex. X, at 56, 83, ECF No. 1-2.) He continued to experience episodes of SVT thereafter, and underwent a second "ablation" surgery in June 2015. (Compl., at 24, ECF No. 1.)

In his § 1983 Complaint, Underwood alleges that on October 14, 2014, Dr. Phillips told him "[i]t would cost too much money to send [him] all the way to MCV to see a heart specialist," as Dr. Mehmood had requested upon discharging him from CVMC. (*Id.*, at 13.) Dr. Phillips said Underwood "would see a doctor and speak to them on a TV screen in medical." (*Id.*) Underwood contends that by failing to order him transported to MCV for evaluation by a heart specialist as

requested by Dr. Mehmood, and by failing to schedule follow up examinations to ensure that his heart was stable, Dr. Phillips acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment.

Dr. Phillips has filed a Motion to Summary Judgment, arguing that Underwood's claims should be dismissed because he failed to exhaust available administrative remedies before filing this lawsuit or, in the alternative, because he fails to demonstrate deliberate indifference. Underwood has responded to Dr. Phillips' motion, making this matter ripe for disposition.

II.

A. Standard of Review.

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam). The court does not weigh evidence, consider credibility, or resolve disputed issues — it decides only whether the record reveals a genuine dispute over material facts. *See Tolan,* 134 S. Ct. at 1866. Facts are material when they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute exists if "a reasonable jury could return a verdict in favor of the nonmoving party." *Kolon Indus., Inc. v. E.I. DuPont de Nemours & Co.*, 748 F.3d 160, 173 (4th Cir. 2014).

B. Failure to Exhaust Administrative Remedies.

The Prison Litigation Reform Act ("PLRA"), among other things, provides in 42 U.S.C. § 1997e(a) that a prisoner cannot bring a civil action concerning prison conditions until he has first exhausted available administrative remedies. This exhaustion requirement is "mandatory." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). It "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To comply with § 1997e(a), an inmate must follow each step of the established grievance procedure that the facility provides to prisoners and meet all deadlines within that procedure before filing his § 1983 action. *See Woodford v. Ngo*, 548 U.S. 81, 90-94 (2006) (finding inmate's untimely grievance was not "proper exhaustion" of available administrative remedies under § 1997e(a)). The defendant bears the burden of proving the affirmative defense that Underwood failed to exhaust available administrative remedies regarding his claims about Dr. Phillips' allegedly deficient medical care before filing this lawsuit. *Jones v. Bock*, 549 U.S. 199, 212 (2007).

Operating Procedure ("OP") 866.1 is the established administrative remedies procedure for inmates in VDOC facilities and, thus, it is the procedure they must follow to comply with § 1997e(a). Under OP 866.1, an inmate must first make a

good faith effort to resolve his concerns informally, normally by completing and submitting an informal complaint form. A staff member will log his form and issue him a receipt. Then, a staff member involved in the issue raised will provide a written response on the bottom of the informal complaint form and return it to the inmate within 15 days. The inmate can then initiate the first step under OP 866.1 — a regular grievance that must be filed within 30 days of the occurrence about which it complains. If a regular grievance is properly filed, the warden or his designee will investigate the concerns raised, and send the inmate a Level I response. If the responding official determines the grievance to be "unfounded," for full exhaustion, the inmate must appeal that holding to Level II, the regional administrator, and in some cases, to Level III. Expiration of the time limit without issuance of a response at any stage of the process automatically qualifies the grievance for appeal to the next level of review.

In her Motion for Summary Judgment, Dr. Phillips submits evidence that from October 28, 2014, through the end of Dr. Phillips' employment at Keen Mountain in January 2015, Underwood did not file any informal complaint forms or regular grievances complaining that Dr. Phillips did not schedule him appropriately for evaluation by a heart specialist. In response, Underwood points out that he mentioned the doctor at Keen Mountain in his regular grievance and

appeal about the dog bite incident, and Dr. Phillips was the only Keen Mountain doctor at the time.

Taking the evidence in the light most favorable to Underwood, I find that he did present his medical claims in a grievance and an administrative appeal, as required by OP 866.1. Underwood's informal complaint about the dog bite did not mention a doctor. His regular grievance did, however, and the Level I response directly addressed Underwood's stated concern that he needed to be scheduled to see a heart specialist.[4] Furthermore, in his multi-page appeal from the Level I response, Underwood stated: "[T]he Dr. at [CVMC] request[ed] I go see a heart specialist at MCV in Richmond VA but the Dr. here said it would cost to[o] much money to send MCV and wants me to see another Dr." (Webb Decl. Ex. B, at 13-14, ECF No. 59-5.) The Level II response by the regional administrator stated: "Your grievance appeal has been reviewed along with the Level I response and your original complaint about the use of K-9 by Officer Beavers on 10-07-2014. The Level I response from [Keen Mountain] is appropriate." (*Id.*, at 2.) Based on this undisputed evidence, I cannot find that Underwood failed to exhaust

---

[4] Underwood's October 28 regular grievance primarily complained about the October 7, 2014, dog bite incident, but also stated: "I have teeth marks that scars on my left arm and I have to go see a heart specialist. . . . [T]he Dr. at [Keen Mountain] [k]no[w]s I have to go see one." (Webb Decl. Ex. B, at 2-5, ECF No. 59-5.) The Level I response to this grievance stated: "According to your record, you received appropriate medical treatment for this event and are currently scheduled for further evaluations." (*Id.*, at 3.)

administrative remedies regarding his complaint about Dr. Phillips, as required under § 1997e(a).

### C. No Showing of Deliberate Indifference.

Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights. *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). Dr. Phillips, as a VDOC-employed doctor, acted under color of state law in providing medical care to Underwood. For an Eighth Amendment claim about that care, Underwood must also show that, objectively, he had a serious medical need for different treatment than he received, and subjectively, that the defendant was deliberately indifferent to that risk. *Farmer v. Brennan*, 511 U.S. 825, 834-37 (1994).

A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (citation omitted). A prison official is deliberately indifferent only if she "knows of and disregards" or responds unreasonably to "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. This subjective component requires proof of intent beyond mere negligence, errors in medical judgment, inadvertent oversights, or disagreements about the prisoner's treatment plan. *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).

Underwood's claim is that in October 2014, Dr. Phillips should have scheduled him immediately for an in-person examination by an MCV cardiologist, with follow up visits. An official's intentional act or omission that merely delays an inmate's access to necessary medical care may state a constitutional claim only if the plaintiff shows that the defendant's conduct resulted in substantial harm to the patient. *Webb v. Hamidullah*, 281 F. App'x 159, 167 (4th Cir. 2008) (unpublished) (noting that such substantial harm caused by delay in treatment would be "evidenced by . . . a marked increase in" the symptoms complained of or their severity).

Underwood fails to establish a serious medical need for different care than he received through the VCU telemed evaluation on December 17, 2014. Dr. Mehmood's discharge summary from CVMC did not state a need for an emergent or immediate consultation with a cardiologist. Dr. Mehmood also did not recommend any particular specialist or note any reason that an in-person, MCV evaluation was medically preferable to the VCU specialist's evaluation that Dr. Phillips arranged.

Moreover, once Underwood left CVMC on October 13 and returned to the prison, Dr. Phillips was his primary care physician, not Dr. Mehmood. Dr. Phillips made a medical judgment that the VCU telemed consultation, scheduled on a non-emergency basis after the required QMC approval on December 17, would

appropriately address Dr. Mehmood's recommendation for a cardiology consult regarding Underwood's SVT issues. In the meantime, Dr. Phillips and her staff monitored Underwood's conditions, provided medication to control his pain and his heart rate, and adjusted the heart medication as needed, based on his symptoms. Underwood's mere disagreement with this course of treatment cannot support the deliberate indifference element of his Eighth Amendment claim.

Finally, Underwood presents no evidence that Dr. Phillips' treatment decisions caused any worsening of his heart condition. While the SVT episodes he experienced may have made Underwood feel that he needed some emergency repair procedure, the doctors and specialists who evaluated his condition from October to December 2014, noted no such finding in his medical records. It is undisputed that Dr. Phillips provided the treatment recommended by Dr. Mehmood after his consultation with a cardiologist on Underwood's condition in October. Certainly, Underwood has provided no evidence that an earlier, in-person consultation with an MCV heart specialist would have resulted in some different treatment plan that would have allowed him to avoid the heart procedures ultimately provided to him in January 2015.

Underwood simply fails to forecast evidence to show the necessary elements of an Eighth Amendment claim concerning the medical care that Dr. Phillips

provided for him. Accordingly, I find that she is entitled to summary judgment as a matter of law.

III.

For the reasons stated, it is **ORDERED** that the Motion for Summary Judgment filed on behalf of Defendant Phillips (ECF No. 58) is GRANTED, and the clerk shall terminate her as a party to this action.

ENTER: September 26, 2016

/s/ James P. Jones
United States District Judge